UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALEJANDRA LOPEZ,
Parent and Friend of C.C., a Minor,

      Plaintiff,

v.

DISTRICT OF COLUMBIA, *et al.*,
      Defendants.

Civil Action No. 03-1665 (JMF)

MEMORANDUM OPINION

Plaintiff brought this action to challenge a decision by the District of Columbia Public Schools ("DCPS") to place a learning disabled child at Prospect Learning Center ("Prospect"), a public school program, and a hearing officer's approval of that placement. The court granted in part and denied in part plaintiff's Motion for Summary Judgment, and subsequently plaintiff moved for attorneys' fees and costs. For the reasons stated herein, plaintiff's Motion for Attorneys' Fees is granted in part and denied in part.

I.    BACKGROUND

At the time of the complaint, C.C., the minor plaintiff, was an eleven-year-old disabled student in the District of Columbia Public School System. On May 22, 2003, a bilingual multi-disciplinary team ("MDT") met to review C.C.'s educational needs. The team determined that C.C. was eligible to receive a free, appropriate, public education and designed an Individualized Education Program ("IEP") for her. During the meeting, DCPS decided that Prospect was an

1

appropriate placement for C.C. Her mother, dissatisfied with this determination, requested a due process hearing. The hearing officer affirmed DCPS's placement, and C.C.'s mother, still dissatisfied, filed the instant action.

When the school year began, C.C.'s mother had not received any information regarding Prospect, and C.C. began attending Accotink, the private school her sister was attending at the time. Shortly thereafter, DCPS mistakenly sent a letter to Accotink naming C.C. as a newly funded student and began providing C.C. with transportation to Accotink a few months into the school year. When DCPS discovered these clerical errors, it informed plaintiff that C.C.'s proper placement was Prospect and that it would only provide transportation and funding to that school in the future.

Subsequently, plaintiff filed a <u>Motion for a Preliminary Injunction</u> to compel DCPS to transport and fund C.C.'s education. This motion was granted, and the court ordered the District of Columbia to transport and fund C.C.'s education at Accotink for the remainder of the 2003-04 school year. The court granted this motion, in large part, because of the threat of irreparable harm to C.C. socially, emotionally, and academically if forced to relocate so late in the school year. However, the court noted that, in granting the motion, it was merely maintaining the status quo, and it deferred any decision on the merits.

Thereafter, the court considered the plaintiff's <u>Motion for Summary Judgment</u>. At that point, two issues were before the court: (1) whether, given the contents of C.C.'s IEP, Prospect was an appropriate placement for her, and (2) whether, because the District funded and transported C.C. to Accotink for a large part of the 2003-04 school year, even before the court's order granting the preliminary injunction, the District would be estopped from arguing that it

should not be required to pay for the educational services C.C. received at Accotink.

On the first issue, the court determined that Prospect was an appropriate placement for C.C. because it could implement the services on C.C.'s IEP by providing her with full-time special education services as well as specialized instruction, psychological services, and speech-language services. In the normal course, DCPS would not have had to reimburse plaintiff for the costs of attending Accotink because the court determined that the placement was proper. However, due to the succession of mistakes committed by DCPS, equitable principles suggested that some reimbursement was necessary. In analyzing what equitable remedy was appropriate, the court drew a distinction between the 2003-04 school year and the 2004-05 school year. The court ultimately determined that, because DCPS's repeated errors reasonably led plaintiff to believe that Accotink was the school that C.C. was supposed to attend for the 2003-04 year, the only equitable solution was to order DCPS to fund C.C.'s attendance at Accotink Academy for that year. However, the court declined to extend the relief to cover the 2004-05 year because, by that point, plaintiff was well aware of: (1) the determination by DCPS that Prospect was the appropriate placement for C.C.; (2) the controversy surrounding C.C.'s attendance at Accotink; and (3) the court order allowing C.C. to attend Accotink only until the end of the 2003-04 school year. In light of these factors, the court determined that plaintiff enrolled C.C. at Accotink for the 2004-05 year at her own financial risk.

Currently before the court is plaintiff's <u>Motion for Attorneys' Fees</u> in regard to the partial granting of her <u>Motion for Summary Judgment</u>. This question revolves around two issues: (1) whether plaintiff is the prevailing party for purposes of attorneys' fees, and (2) if so, what amount of attorneys' fees should be awarded.

**II.     DISCUSSION**

    A.    <u>Whether Plaintiff Is a Prevailing Party Entitled to Attorneys' Fees</u>

        1.    Legal Standard

The Individuals with Disabilities Education Act ("IDEA" or "Act") provides that "in any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I).

The Supreme Court has held that, in order to qualify as a "prevailing party," two conditions must be met. First, there must be an "alteration in the legal relationship of the parties." <u>Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.</u>, 532 U.S. 598, 605 (2001). <u>See also</u> <u>Alegria v. District of Columbia</u>, 391 F.3d 262, 264-65 (D.C. Cir. 2004). Second, this change in relationship must occur as a result of formal judicial action. <u>Buckhannon</u>, 532 U.S. at 605-06; <u>Alegria</u>, 391 F.3d at 264-65. In other words, even though plaintiff need not prevail on all of her claims, <u>see</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983), "there must be an 'alteration in the legal relationship of the parties' that has been given some judicial *imprimatur*. . ." in order for a court to award attorneys' fees. Armstrong v. Vance, 328 F. Supp. 2d 50, 57 (D.D.C. 2004) (quoting Buckhannon, 532 U.S. at 605). Thus, the issue at hand is whether granting in part plaintiff's <u>Motion for Summary Judgment</u> was a judicial action that created an alteration of the legal relationship between the parties.

        2.    Analysis

By granting in part and denying in part plaintiff's <u>Motion for Summary Judgment</u>, this court awarded plaintiff funding for the entire 2003-04 school year, but denied funding for the

4

2004-05 school year and a declaratory judgment designating Prospect as an improper placement for C.C.  Plaintiff claims that the court's decision granting in part its Motion for Summary Judgment makes it the prevailing party.  Memorandum of Points & Authorities in Support of Plaintiff's Motion for Attorneys' Fees ("Mem. of P. & A. in Supp. of Pl.'s Mot.") at 1.  Defendant claims that it prevailed on the primary issue in front of the court and, therefore, it, rather than the plaintiff, is the prevailing party.  Defendant's Opposition to Plaintiff's Second Motion for Attorneys' Fees ("Def.'s Opp'n") at 2.

It is undisputed that plaintiff did not receive all of the relief she sought.  However, plaintiff need not prevail on the primary issue in the lawsuit, as defendant maintains.  As the Supreme Court has stated:

> We think it clear that the "central issue" test applied by the lower courts here is directly contrary to the thrust of our decision in Hensley. Although respondents are correct in pointing out that Hensley did not adopt one particular standard for determining prevailing party status, Hensley does indicate that the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all.

Texas State Teachers Ass'n v. Garland Independent School Dist., 489 U.S. 782, 790 (1989).  Indeed, as long as plaintiff prevailed on "'any significant issue in [the] litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." Id. at 791-92 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).  See also District of Columbia v. Patterson, 667 A.2d 1338, 1344 (D.C. Cir. 1995).

It cannot be denied that, by virtue of my decision, the District of Columbia was

compelled to pay to Accotink, on C.C.'s behalf, the amount of money due for her 2003-04 education. Surely, being obliged by court order to fund plaintiff's education at Accotink for the 2003-04 year materially altered the relationship between plaintiff and the District because it forced the District to undertake a new obligation that it protested it did not have. In addition, by prevailing on that portion of her motion for summary judgment, plaintiff achieved some of the benefit that she originally sought. Accordingly, plaintiff is undeniably a "prevailing party" entitled to some award of attorneys' fees.

      B.      The Amount of Attorneys' Fees That Should Be Awarded to Plaintiff

           1.      Legal Standard

As indicated above, under the IDEA, "the court *in its discretion*, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B) (emphasis added). The amount of the fee should be determined based on the facts of each case. When awarding fees for a partially successful plaintiff, it is crucial to first determine whether the claims on which plaintiff prevailed are related to those which were unsuccessful. See Hensley,[1] 461 U.S. at 434-435. If the claims are related, meaning they involve a common core of facts or are based on related legal theories, "much of counsel's time will likely be devoted to the litigation as a whole, making it difficult to divide the hours on a claim-by-claim basis." Id. at 435. In this situation, the court should focus "on the significance of the overall relief obtained by plaintiff in relation to the hours reasonably expended on the

---

[1] Hensley notes that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a "prevailing party." Hensley, 461 U.S. at 433. Thus, these standards encompass cases involving the IDEA due to the language in 20 U.S.C. § 1415(i)(3)(B).

litigation." Id.  If the claims are unrelated, however, no fees will be awarded for hours devoted to the unsuccessful claim.  Id.

If any fees are awarded, they "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. . . ." 20 U.S.C. § 1415(i)(3)(C).  The "fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates." Abraham v. District of Columbia, 338 F. Supp 2d 113, 123 (D.D.C. 2004).

    2.    Analysis

Defendant, in its opposition, claims that if plaintiff is awarded any attorneys' fees, the award should be reduced from what is sought because (1) plaintiff enjoyed only limited success, (2) plaintiff did not meet the burden of establishing the hourly rates charged, and (3) plaintiff failed to demonstrate the reasonableness of some fee requests because it included clerical work, vague entries, and excessive charges.  Def.'s Opp'n at 1-2.

In determining the amount of fees to be awarded for plaintiff's successful claim, it must first be determined whether the successful claim is related to the unsuccessful claim.  In this case, plaintiff's first claim, that Prospect was an improper placement for C.C., was based on C.C.'s educational needs, the contents of the IEP, DCPS's decision to place C.C. at Prospect, and the hearing officer's decision to uphold DCPS's determination.  These events happened well before the events that gave rise to the second claim - the confusion surrounding C.C.'s placement and DCPS's repeated mistakes - took place.  The legal theories underlying each claim were also very different, the first claim being premised on the reasonableness of the hearing officer's decision and the standards enunciated in District of Columbia regulations, and the second revolving

around equitable principles. Therefore, because the claims did not involve a common core of facts and were not based on related legal theories, they are "unrelated" claims under <u>Hensley</u>'s standard. <u>Hensley</u>, 461 U.S. at 435. Hence, fees will be awarded only for hours devoted to the successful claim.

Specifically, as stated above, plaintiff succeeded on only one argument: that, because of the actions taken by the District during the 2003-04 school year, the District should fund C.C.'s education for that year. Plaintiff raised this argument only in her <u>Motion for Preliminary Injunction</u>. Indeed, at the time of the administrative hearing and filing of the complaint, the 2003-04 year had not yet begun and the District had not yet "mistakenly" named C.C. as a funded student, funded her Accotink education, or transported her to the private academy. Instead, the administrative hearing, complaint, and motion for summary judgment focused exclusively on DCPS' proposed placement at Prospect and the hearing officer's affirmation of that decision. Because these arguments were ultimately unsuccessful, the court will not award fees for time spent advancing them. Accordingly, all time related to the administrative hearing, complaint, and motion for summary judgment will be eliminated. As defendant concedes in the event that the court awards any fees, however, fees associated with plaintiff's successful arguments, which appear in the <u>Motion for Preliminary Injunction</u>, shall be awarded.[2]

As for the rates requested by plaintiff, she seeks attorneys' fees based on the <u>Laffey</u> Matrix, a "matrix used widely in the District of Columbia to determine the prevailing wages in

---

[2] It should be noted that, in May 2004, plaintiff filed a <u>Motion for Attorneys' Fees</u> regarding her successful <u>Motion for Preliminary Injunction</u>. The court denied fees because it had not yet determined the merits of the case. However, because the court ultimately found the arguments raised in plaintiff's <u>Motion for Preliminary Injunction</u> successful, it will award fees for work done on that motion.

the community." Plaintiff's Reply to Defendant's Opposition to Plaintiff's Second Motion for Attorneys' Fees ("Pl.'s Reply") at 4-5. Defendant contests this rate, claiming that the case at hand does not include the type of "complex federal civil rights litigation" for which this matrix was intended and that Ms. Gleason has not shown that she is entitled to these rates. Def.'s Opp'n at 8-9. However, "[c]ourts in this Circuit have found rates charged by attorneys in IDEA actions to be reasonable if they conform to the United States Attorney's Office's Laffey Matrix." Kaseman v. District of Columbia, 329 F. Supp. 2d 20, 25 (D.D.C. 2004). While defendants do have the right to challenge any part of the prevailing party's claims for attorney's fees, they "must provide 'specific and contrary evidence' to rebut the presumption of reasonableness . . . and demonstrate that a lower rate would be appropriate." Id. at 26 (citing Covington v. District of Columbia, 57 F. 3d 1101, 1110-11 (D.C. Cir. 1995)). In the case at hand, defendant has not provided the court with the convincing "specific and contrary" evidence needed to meet the burden of rebutting the presumption of reasonableness. Thus, fees awarded for hours devoted to plaintiff's successful claim will be calculated according to the Laffey Matrix.

Defendant also claims that plaintiff has failed to demonstrate the reasonableness of some of her fee requests because they are either vague, excessive, or clerical in nature. Hours that are not "reasonably expended" must be excluded from a fee calculation. Hensley, 461 U.S. at 434. "Plaintiffs may satisfy their burden of demonstrating that the number of hours expended on particular tasks was reasonable by submitting invoices that are sufficiently detailed to 'permit the District Court to make an independent determination whether or not the hours claimed are justified.'" Kaseman, 329 F. Supp 2d at 26 (quoting Nat'l Assoc. of Concerned Veterans v. Sec'y of Def., 675 F. 2d 1319, 1327 (D.C. Cir. 1982)).

Defendant contests four specific entries on the grounds of vagueness. Def.'s Opp'n at 12. However, in her reply, plaintiff clarified these entries. Pl.'s Reply at 6. Each entry was related to one of plaintiff's successful claims; thus, time associated with these entries will not be deducted from the attorneys' fees calculation.

Defendant further contests the charge of $2,090.00 (9.5 hours) for drafting and editing a demand response letter to DCPS on March 2, 2004, March 7, 2004, and March 8, 2004 on the grounds that time spent on this task was excessive. Def.'s Opp'n at 13. However, as plaintiff explains in her reply, despite the fact that the product of this expended time was only 1.5 pages, "the research and much of the initial drafting went towards the production of subsequent work on the Preliminary Injunction." Pl.'s Reply at 7. Because the time devoted to this letter aided in the preparation of plaintiff's successful preliminary injunction motion, I find that this is a reasonable entry and will not deduct any time for this task.

Finally, defendant claims that plaintiff inappropriately included entries for "filing" motions. Def.'s Opp'n at 12. Defendant persuasively argues that these are clerical, rather than legal, functions and the IDEA does not provide plaintiff with the right to recoup these costs. Id. at 12. This Circuit has addressed the question of whether clerical work is compensable and has concluded that Congress never intended for clerical billings to be included in attorneys' fees and that such services are "generally considered within the overhead component of a lawyer's fee." In re Olson, 884 F. 2d 1415,1426-27 (D.C. Cir. 1989). While the entries at issue are different from those in In re Olson because the tasks were performed by an attorney - not clerical personnel - the court will eliminate the entries for the following reason. This is not a case in which the attorney performed *de minimis* clerical functions that cannot be separated from clearly billable legal work.

Instead, plaintiff's counsel billed for significant chunks of time solely for the clerical task of "filing." Indeed, for each document she filed on the Electronic Case Filing System, the attorney billed between one-half hour and one hour of attorney time. Aside from being a clerical task, the court finds that spending this much time to file documents electronically is unreasonable and will eliminate time spent on such tasks. Thus, the "filing" entries on March 12, 2004, April 2, 2004, and April 22, 2004 have been deducted from the attorneys' fees award.

          3.      Summary of Attorneys' Fees Awarded

The following table demonstrates, by category, the fees that the court will award as well as the fees that have been discounted from plaintiff's fee request. It should be noted that plaintiff originally requested a total of $23,834.00 in attorneys' fees. Because I have discounted a total of $13,950.00, it should follow that the amount to be awarded is $9,884.00. However, as demonstrated by the column that itemizes the entries for which the court has decided to award attorneys' fees, the total amount awarded to plaintiff is $9,530.00. The discrepancy in these numbers is attributable to mathematical errors in plaintiff's original calculation.

|  | Fees Awarded by the Court | Fees Eliminated by the Court |
|---|---|---|
| Entries Not Related to Plaintiff's Successful Claim |  | 1.8 hours at $380/hour = $684.00<br>56.8 hours at $220/hour = $12,496.00<br>**$13,180.00** |
| Entries of a Clerical Nature |  | 3.5 hours at $220/hour = **$770.00** |
| Entries Conceded by Defendant Because Sought for Time Spent on Successful Argument | 2 hours at $380/hour = $760.00<br>22.2 hours at $220/hour = $4,884.00<br>**$5,644.00** |  |
| Entries Approved by the Court Because Related to Successful Argument | 1.6 Hours at $380/hour = $608.00<br>12.9 Hours at $220/hour = $2,838.00<br>**$3,446.00** |  |
| Fees Sought For Current Fee Request | 2 Hours at $220/hour = **$440.00** |  |
| **Totals** | **$9,530.00** | **$13,950.00** |

C.   The District of Columbia Appropriations Act

Finally, defendant contends that the court must take into account the applicable fee cap under the District of Columbia Appropriations Act when awarding plaintiff attorneys' fees. Def's Opp'n at 19. The District of Columbia Appropriations Act of 2005 ("2005 Act") states:

> None of the funds contained in this Act may be made available to pay the fees of an attorney who represents a party in an action or any attorney who defends an action, including an administrative proceeding, brought against the District of Columbia Public Schools under the [IDEA] in excess of $4,000 for that action . . . .

District of Columbia Appropriations Act of 2005, Pub. L. No. 108-335, § 327(1), 118 Stat. 1332 (2004).  Identical language is found in the 2003 and 2004 Consolidated Appropriations Acts. Consolidated Appropriations Act, 2004, Pub. L. No. 108-199, § 432(1), 118 Stat. 3 (2004); Consolidated Appropriations Resolution, Pub. L. No. 108-7, § 144(1), 117 Stat. 132 (2003). This act effectively caps the amount of attorneys' fees that the District of Columbia can pay

12

prevailing parties in IDEA actions.  Kaseman, 329 F. Supp 2d at 23.

In Calloway v. District of Columbia, the Court of Appeals for the District of Columbia Circuit interpreted Section 130 of the 1999 D.C. Appropriations Act, which contains language equivalent to that in the 2005 act.  Calloway, 216 F. 3d 1, 4 (D.C. Cir. 2000).  The court found that Congress "did not use section 130 to limit the power of federal courts to award fees under IDEA."  Id. at 12.  The court in Whatley v. District of Columbia followed this same approach, finding that Congress did not use the fee cap to limit the power of the federal courts to award fees under the IDEA, but the fee caps did limit defendant's ability to pay them.  Whatley, 328 F. Supp. 2d 15, 19 (D.D.C. 2004).  Therefore, courts can still award fees in excess of the statutory cap, despite DCPS's lack of authority to pay them.  Kaseman, 329 F. Supp. 2d at 23.

### III. CONCLUSION

For the reasons stated herein, this court awards plaintiff $9,530.00 in attorneys' fees.  An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Date: